STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 19-CVS-1474

NEIGHBORHOOD NETWORKS )
PUBLISHING, INC. and N2 )
FRANCHISING, LLC, )
       Plaintiffs )
  )
v. )
  )
JACQUELINE MARIE LYLES and )
LIFESTYLE PUBLICATIONS, LLC, )
       Defendants )

TEMPORARY RESTRAINING ORDER

AND

NOTICE OF HEARING ON
PRELIMINARY INJUNCTION

    This cause was heard on the date set forth below before the undersigned Superior Court Judge on Plaintiffs' Motion for Temporary Restraining Order pursuant to N.C. R. Civ. P. Rule 65. Hearing the matter *ex parte* and having considered Plaintiff's Verified Complaint, Motion for Temporary Restraining Order, and Rule 65(b) Notice of Application for Temporary Restraining Order, the Court finds that Plaintiffs Neighborhood Networks Publishing, Inc. and N2 Franchising, LLC (collectively, "N2") have demonstrated a likelihood of success on the merits of their claims against Defendants Jacqueline Marie Lyles and Lifestyle Publications, LLC; that the Motion's requested relief is necessary and appropriate to prevent irreparable and continuing harm to N2; and that it appears from facts shown by the Verified Complaint that immediate and irreparable injury, loss or damage will result to N2 before Defendants can be heard in opposition. Based on the matters of record, the Court makes the following Findings of Fact and Conclusions of Law and enters this Order restraining Defendants as set forth below.

## FINDINGS OF FACT

1.    N2 Publishing is the publisher of a community magazine circulated in Atlanta, Georgia, entitled *Peachtree Battle Living*.

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: Kristina J. McCoy
Deputy Clerk of Superior Court

2. Defendant Jacqueline Lyles is a resident of Atlanta, Georgia, and was a franchisee of Plaintiff N2 Franchising, LLC pursuant to a franchise agreement dated October 18, 2017, which is attached as Exhibit A to the Complaint and which sets forth the rights and obligations related to the *Peachtree Battle Living* publication ("Franchise Agreement").

3. Pursuant to the Franchise Agreement, Defendant Jacqueline Lyles has consented to the jurisdiction of state and federal courts located in New Hanover County, North Carolina, and waives any objection to personal jurisdiction or venue in this court.

4. Defendant Lifestyle Publications, LLC is engaged in the community publication business and publishes magazines in North Carolina, such that it is conducting business in the State of North Carolina.

5. N2 is a national publisher of magazines and newsletters for communities, neighborhoods, and community associations, and N2 sells print advertising to businesses in those publications. The residential community publication business is competitive and operates on both the local and national level for companies like N2.

6. N2 currently has approximately eight hundred (800) Area Directors, which are the names given to the franchisees, that facilitate publication of N2 publications and sell advertising for those publications.

7. N2 provides its franchisees with extensive and commercially valuable training, and requires franchisees to provide, *inter alia*, confidentiality and non-compete covenants before providing training or share information regarding its unique business model. These covenants are necessary for N2 to safely share confidential, proprietary, and commercially valuable business information with its franchisees.

8. N2's confidential, proprietary, and commercially valuable business information includes, *inter alia*, publication rates, costs, and pricing methodology;

2

advertising targets, rates, and pricing methodology; sales and marketing strategies; publication management strategies (including editing, layout, and supply-chain management); strategic plans for growth into new territories; and compilation of business information (all of which is referred to as N2's "Confidential Information and Trade Secrets").

9. N2 franchisees receive extensive training on identifying the right communities for an N2 Publication; establishing and fostering social communities; and communicating with local businesses to sell advertising. N2 also provides franchisees with "scripts" for marketing N2 Publications advertising options to local businesses. N2 also provides information on neighborhoods that it has already identified as targets.

10. The assigned territory for Lyles as franchisee was in and around the residential Atlanta's Peachtree Battle Community, which area is more particularity described in Attachment B to the Franchise Agreement (collectively the "Territory").

11. Lyles, as franchisee, used N2's training, know-how, and software systems, to offer N2's publishing services and sold advertising for N2's publication, *Peachtree Battle Living*.

12. On or about August 31, 2018, Lyles sold her franchise to William Craig O'Neal ("O'Neal"), and Lyles ceased to be an Area Director. N2 consented to the transfer of the franchise to O'Neal. Despite transferring her Franchise Agreement, Lyles remained bound by the confidentiality, non-solicitation, and noncompetition covenants, as well as the non-solicitation terms in the Franchise Agreement.

13. Notwithstanding the restrictions in the Franchise Agreement, after ending her affiliation with N2, Lyles began working with Lifestyle. Lifestyle actively competes with N2 throughout the United States, generally, and in North Carolina and the Territory, more specifically.

14. Lyles now solicits advertisements for several Lifestyle magazines, including *BuckHaven Lifestyle, Perimeter North Lifestyle, Johns Creek Lifestyle,* and

3

Case 7:19-cv-00089-BO    Document 1-6    Filed 05/03/19    Page 3 of 8

*Alpharetta Lifestyle*. Lyles actions on behalf of Lifestyle violate the noncompetition and non-solicitation provisions of the Franchise Agreement.

15. Lyles had access to N2's Confidential Information and Trade Secrets, and there is a reasonable likelihood that N2's Confidential Information and Trade Secrets are being used, or will be used, in violation of the Franchise Agreement by the competition by these Defendants.

16. In her role as Area Director, Lyles had access to two of N2's confidential and proprietary software systems: N2 Portal and PubManager. N2 Portal is the cloud-based software system N2's Area Directors use to, among other things, manage advertiser contact information, advertising contracts and orders, and advertiser payment information. N2's PubManager is the cloud-based software system that Area Directors use, among other reasons, to upload and manage files containing articles and customer advertisements for publication in N2's magazines. PubManager is hosted on N2's servers located in Raleigh, North Carolina. Access to both N2 Portal and PubManager require a unique username and password, which Lyles had as an Area Director.

17. Once Lyles transferred her franchise, the Franchise Agreement obligated her to halt use of N2 Portal and PubManager. However, Lyles repeatedly used her unique username and her password to access both N2 Portal and PubManager to review client contact records, client payment records, and N2 content, after Lyles sold her franchise. Lyles used N2 Portal to view, among other things, the identity of certain of N2's clients, the nature of the ads that those clients were running, the contact information for certain of N2's clients, and the identity of certain N2 clients who had not yet paid N2 for the period of January to April 2019.

18. Lyles accessed N2 Portal and PubManager to gather information about N2's current clients. N2 believes, and based on the terms of the Verified Complaint, the Court finds, that these actions were undertaken to target those clients and to solicit their business away from N2 for the benefit of Lifestyle. In addition, Lyles

4

used PubManager to search for and view content and proofs related to multiple N2 publications circulated in Buckhead and Peachtree Battle areas of Atlanta.

19. On or about March 28, 2019, Lyles used her personal email address to contact N2's Field Support team, which is responsible for providing support services to N2 Area Directors, and to request a copy of an advertisement that N2 had designed and created for one of its advertisers, Cunningham Associates. As part of that request, Lyles stated, "I used to work for n2 and 'retired' recently." She did not notify or otherwise inform N2 that she, in fact, was working with Lifestyle at the time of her request.

20. In the Complaint, N2 seeks a constructive trust or equitable lien on all assets of Defendants generated by their diversion and misappropriation of N2's assets, funds, property, and business opportunities.

21. Unless this Court enters the Temporary Restraining Order, N2 will continue to suffer immediate and irreparable injury and loss.

## CONCLUSIONS OF LAW

1. This Court has the power, jurisdiction, and legal authority to grant this Temporary Restraining Order.

2. Plaintiffs' Motion for Temporary Restraining Order is properly before the Court.

3. Plaintiffs have satisfied the notice requirements of Rule 65(b) of the North Carolina Rules of Civil Procedure, and this Temporary Restraining Order may be entered without further notice to Defendants due to the immediate and irreparable harm being restrained by this Temporary Restraining Order.

4. N2 has demonstrated a likelihood of success on the merits of each claim against Defendants as set forth in the Verified Complaint.

5. N2 is and will continue to suffer irreparable injury absent entry of this Temporary Restraining Order.

6. Such injuries, and the reason they are irreparable, are as follows:

a. Absent this Order, N2 would suffer irreparable injury in the form of a long-term and/or permanent inability to compete in the Territory or its surrounding area as a result of Defendants' unfair competition and misappropriation of N2's Confidential Information and Trade Secrets;

b. Absent this Order, N2 would suffer irreparable injury in that Defendants, through deceit, unfair competition, and misrepresentation, would utilize N2's Confidential Information and Trade Secrets, or content generated by N2 for its customers, to lure N2 customers to Lifestyle's publications or to otherwise benefit Defendants and damage N2;

c. Absent this Order, N2 would suffer irreparable injury if Defendants were not restrained from destroying, removing, transferring or altering any documents or tangible things, including computer files and other electronic data in that the loss of such information and data would prejudice N2's ability to prosecute this action and further undermine its ability to compete;

d. Absent this Order, N2 would suffer irreparable injury if Defendants were not restrained from causing any N2 customer to pay Defendants directly, or to pay anyone acting at the direction of any Defendant, for advertising created by N2;

e. Absent this Order, N2 would suffer irreparable injury if Defendants were not restrained from transferring or disposing of any funds, assets or property, whether tangible or intangible, belonging to N2 under law or equity which Defendants diverted from N2's *Peachtree Battle Living* magazines in that N2 is entitled to the imposition of a constructive trust on such property and N2 would be prejudiced if Defendants were permitted to use such ill-gotten gains to continue to engage in unfair competition with N2.

7. The covenants not to compete set forth in Section 7 of the Franchise Agreements are in writing, supported by consideration, protect N2's legitimate business interests, and are reasonable as to both time and territory.

8. The balance of the equities weighs in favor of granting injunctive relief.

9. Plaintiffs are entitled to the temporary injunctive relief, and this Temporary Restraining Order should be issued.

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS NOW, THEREFORE, HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. Jacqueline Marie Lyles, and any agents or employees of Jacqueline Lyles and others persons in active concert or participation therewith, are enjoined and restrained from conducting, operating, or otherwise participating in the business of publishing community/neighborhood magazines and from selling or soliciting advertisements for any such publication in the "Restricted Territory" described and identified herein. The "Restricted Territory" is (i) the Community of Peachtree Battle, in the State of Georgia, Fulton County, and in zip code 30305; (ii) the area located within the fifteen (15) mile radius around the perimeter of the Community of Peachtree Battle, in the State of Georgia, Fulton County, and in zip code 30305; and (iii) any other community or neighborhood located within the fifteen (15) mile radius around the perimeter of any territory of any other N2 Area Director.

2. Defendants, and any agents or employees of Defendants and others persons in active concert or participation therewith, are further enjoined and restrained from directly or indirectly using, disclosing or copying N2's Confidential Information or Trade Secrets, or assisting any other person or entity to do so.

3. Defendants and all persons with notice of this Order are prohibited from destroying, removing, transferring or altering any documents or tangible things, including computer files and other electronic data, which is relevant to the subject matter of this action;

4. Defendants, and any agents or employees of Defendants and others persons in active concert or participation therewith, are prohibited from causing

7

any N2 customer to pay Defendants directly, or to pay anyone acting at the direction of any Defendant, for advertising created by N2.

5. Defendants, and any agents or employees of Defendants and others persons in active concert or participation therewith, are prohibited from transferring or disposing of any funds, assets or property, whether tangible or intangible, belonging to N2 under law or equity which Defendants, individually or collectively, diverted to themselves, which would include, but not be limited to, any funds derived from any advertisement taken from, or from any customer contacted based on information identified within, the N2 propriety software, such as the N2 Portal or N2 PubManager.

6. Defendants, and any agents or employees of Defendants and others persons in active concert or participation therewith, are prohibited from taking any actions that violate, or will cause Defendant Jacqueline Lyles to violate, the noncompetition and nonsolicitation covenants and confidentiality obligations in the Franchise Agreement.

7. The hearing on N2's Motion for Preliminary Injunction is scheduled for 10:00 a.m. on May 6, 2019, in Courtroom 400 of the New Hanover County Courthouse.

8. The Plaintiff is ordered to post a bond of $200.00, which may be deposited to New Hanover County Clerk of Court; and

9. This Order shall remain in effect until the hearing on Motion for Preliminary Injunction, unless extended before that time.

SO ORDERED, at  1:43  o'clock,  p.m. on April  23 , 2019.

Superior Court Judge Presiding
R. Kent Harrell