IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CIVIL ACTION FILE NO.: 7:19-cv-89-BO

| | | |
|---|---|---|
| NEIGHBORHOOD NETWORKS PUBLISHING, INC. and N2 FRANCHISING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JACQUELINE MARIE LYLES and LIFESTYLE PUBLICATIONS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DECLARATION OF**<br>**MICHELLE C. HOWARD** |

I, Michelle C. Howard, declare as follows:

1.     I am a citizen of the United States and a resident of the State of North Carolina.

2.     I am over 18 years of age; I am not subject to any disability; and I am fully able and authorized to make the statements set forth in this Declaration. The factual statements set forth in this Declaration are based on my personal knowledge.

3.     I am a paralegal at Ward and Smith, P.A. and have been for the last eighteen months.

4.     On June 24, 2019, Carrie Francis, counsel for Defendant Lifestyle Publications, LLC, delivered a copy of Defendant Jacqueline Lyles' Independent Contractor Agreement, with Attachment A, to our office at Ward and Smith, P.A., by email.  She also delivered the Independent Publisher Agreement

dated August 15, 2015, between Defendant Lifestyle Publications, LLC and Lifestyle Publications S.E., LLC. The Independent Contractor Agreement was included in the production from Lifestyle Publications S.E., LLC, and it is attached in Exhibit 1 (N2_000042-43) to the Declaration of James Newman dated June 2020. However, Attachment A was not included in the production from Lifestyle Publications S.E., LLC.

     5.    Attached and incorporated as <u>Exhibit 1</u> is a true and correct copy of the complete Independent Contractor Agreement that was received by our office at Ward and Smith, P.A. by email from Carrie Francis, Defendant Lifestyle Publications, LLC's counsel, on June 24, 2019.

     6.    Attached and incorporated as <u>Exhibit 2</u> is a true and correct copy of the Independent Publisher Agreement that was received by our office at Ward and Smith, P.A., by email from Carrie Francis, Defendant Lifestyle Publications, LLC's counsel, on June 24, 2019.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on June 25, 2020.

_Michelle C Howard_

Michelle C. Howard

2

# EXHIBIT
# 1

# Independent Contractor Agreement for

This Independent Contractor Agreement made and entered into by and between, Jackie Lyles and Lifestyle Publications SE LLC Welcome to the Lifestyle team.

Your services include, but are not necessarily limited, to the following:

- **Solicit businesses to advertise in publication stated above.**
- **Keep up with customers to provide excellence customer service and abide by magazines business practices**
- **Assist in payment of client invoices when necessary.**
- **Attend networking events when and where available.**

Your compensation will be 15% commission on monthly sales. Payments are made on the 1st of each month. Your services will start Feb 19th 2019, and you will receive your first payment on the placement month of your sales.

This Agreement will begin on the date set forth below, and will continue until terminated by either party. Either party may terminate this Agreement, effective upon written or oral notice of termination, at any time and for any reason.

For your first 3 months plus rest of Feb. you will receive the compensation package of:

- $1,000.00 base guarantee draw w/ Feb to be prorated.
- $15% commission paid end of each mo. on gross sales.

After May return to straight 15% commission program allowing you 3 ½ months to build territory.

This Agreement is conditioned on your acceptance of the attached Attachment A, Confidentiality, and Restrictive Covenant Agreement.

Your relationship with Magazine will be that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, agency, joint venture, or employment relationship. Contractor will not be entitled under this Agreement to any of the benefits that Magazine may make available to its employees, including but not limited to group health insurance, life insurance, profit-sharing, retirement benefits, paid vacation, holidays or sick leave, or workers' compensation insurance. No part of Contractor's compensation will be subject to withholding by Magazine for the payment of any social security, federal, state or any other employee payroll taxes. Magazine will regularly report amounts paid to Contractor by filing a Form 1099-MISC with the Internal Revenue Service as required by law. Contractor may perform the services required by this Agreement at any place or location and at such times as Contractor shall determine. Contractor agrees to provide all tools and instrumentalities, if any, required to perform the services under this Agreement.

Contractor acknowledges and agrees that all documents produced by Contractor, including but not limited to memoranda, research notes, correspondence, emails,



pleadings, and reports in the course of his work for Magazine, shall be the property of Magazine, and Contractor shall retain no ownership, interest, or rights therein.

If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (a) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (b) the legality, validity, and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

This Agreement is executed and delivered within the state of Georgia and all the rights and obligations of each party shall be construed and enforced in accordance with, and governed by Georgia law.

This Agreement, including Attachment A, constitutes all of our agreements and understandings regarding your services. There are no other oral or written agreements regarding your services, and no one else is authorized to make any other agreements. Any future modifications or changes in your contract must be in writing and signed by you and Magazine's owner on behalf of the Magazine.

If this is acceptable please sign the original of this Agreement, including Attachment A and return it to me. We are very happy to have you on the team.

Sincerely,

_____

James Newman
Publisher

2/19/2019

Date

Agreed and Accepted:

Jacqueline Lyles

Contractor Name

Jacqueline Lyles

Signature

1-18-19

Date

2

# Attachment A

## Confidentiality, and Restrictive Covenant Agreement

In consideration of my contract with **Lifestyle Publications SE LLC**, your payment of compensation to me and your entrusting to me confidential information related to the Magazine's and its affiliates' business, I hereby agree as follows:

1.  <u>Confidentiality.</u> During the term of my contract and at all times thereafter:

    (a) I shall keep confidential and shall not use or divulge to any person, firm, corporation, or other entity or business, without your specific, prior written consent (which may be granted, withheld, or conditioned for any or no reason), any information ("Information") concerning the Magazine's and/or its affiliates' business or affairs, any trade secrets (including, without limiting the generality of such phrase, the Magazine's information concerning financial information, identities of customers, suppliers, and other business relations, terms of financial arrangements with third parties or the Magazine, business forecasts, sales, merchandising, and marketing plans, and other information) or other specialized information or data heretofore or hereafter learned, acquired, or coming to my knowledge while under this contract, regardless of the format thereof, and

    (b) all documents, records, notebooks, lists, and other material (regardless of the format thereof, and any copies thereof) containing Information or derived from Information, including, without limitation, information of the nature described in this Paragraph 1, whether prepared by me or others, shall at all times be subject to Paragraph 1(a) above and be your sole property, shall be left with you, and shall not be removed by me without your specific, prior written consent (which may be granted, withheld, or conditioned for any or no reason).

2.  <u>Obligation Not to Solicit Customers, Employees, or Consultants.</u> During the term of my contract, and for the applicable period set forth below, I shall not, directly or indirectly, whether as an employee, employer, contractor, consultant, agent, principal, partner, trustee, stockholder, corporate officer, director, investor, co-venturer, or in any other individual or representative capacity, and whether for my or another's benefit:

    (a) For the period ending on the two-year (2-year) anniversary of the termination of my contract for any reason, solicit or otherwise deal (other than in the performance of my contract with the Magazine) with any of the Magazine's customers or other business relationships, or participate in any business that does so, if such solicitation or dealing is with regard to any product or service that competes with any product or service sold by the Magazine and, as a result thereof, the Magazine's business relationship with such person or entity would be harmed: (Competing businesses include any lifestyle and/or fashion magazines. These include but are not limited to: Simply Buckhead, My

3



5. <u>Equitable Relief.</u> I acknowledge that the services to be rendered by me are of a special, unique, unusual, extraordinary, and intellectual character, which gives them a peculiar value, and the loss of which cannot reasonably or adequately be compensated in damages in an action at law. A breach by me of any of the provisions contained in this Agreement will cause the Magazine irreparable harm, loss, injury, and damage. I further acknowledge that I possess unique skills, knowledge, and ability and that competition by me in violation of this Agreement, unauthorized disclosure of the Magazine's Information, or any other breach or threatened breach of the provisions of this Agreement would be extremely detrimental to the Magazine. I acknowledge that the breach or threatened breach of any of the covenants and agreements contained in this Agreement cannot reasonably or adequately be compensated by damages and that such breach will cause you irreparable harm, loss, injury, and damage to the Magazine. Accordingly, notwithstanding anything to the contrary contained in this Agreement, you, in addition to and not in limitation of any and all other rights and remedies, at law or in equity, shall be entitled to injunctive and other equitable relief (without having to post a bond or other security; and/or without having to prove damages) to curtail or prevent such breach or threatened breach (including, without limitation, restraining me and any business, firm, partnership, individual, corporation, or other entity from committing, facilitating, aiding, or continuing such breach or threatened breach).

6. <u>Effect of Termination.</u> Termination of my contract for any reason shall not affect the continuing validity and enforceability of the provisions of this Agreement, which shall survive such termination for the applicable periods set forth above. My obligations under this Agreement also shall be binding upon my heirs, executors, assigns, and administrators, and shall inure to the benefit of the Magazine and each of its affiliates and each of their respective successors and assigns.

7. <u>Invalid Provisions.</u> The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision. Without limiting the generality of the foregoing, I agree that if Paragraph 2, or any provision thereof, is held to be unenforceable because of a finding that it is unreasonable in any respect, the court of jurisdiction may determine the extent to which such Paragraph or provision would be reasonable, and this Agreement shall be deemed amended accordingly and will be enforced to such extent.

8. <u>Entire Agreement; Waiver; Remedies.</u> This Agreement constitutes our entire agreement concerning the subject matter hereof, and there are no agreements or representations with respect thereto except as contained herein; and may not be amended, modified, or terminated, nor may any of its provisions be waived, except by a writing signed by you and me. A waiver of any of the terms or conditions of this Agreement, or any breach thereof, shall not be deemed a waiver of such term or condition for the future, or of any other term or condition, or of any subsequent breach thereof. All rights and remedies reserved to you by this Agreement shall be cumulative, and shall not be in limitation of any other right or remedy that you may have at law, in equity, or otherwise.

9. <u>Binding Effect.</u> In the event of: (a) a merger where you are not the surviving entity; (b) your consolidation with another entity; or (c) a transfer of all or substantially all



of your assets, the surviving or consolidated entity, or in the event of a transfer of your assets, the transferee of your assets, will have the benefit of the provisions of this Agreement; and any consent by me to the assignment of the benefits of this Agreement shall not be required.

**I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS IT IMPOSES ON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, IN DUPLICATE, WITH THE UNDERSTANDING THAT ONE COUNTERPART WILL BE RETAINED BY THE MAGAZINE AND THE OTHER COUNTERPART WILL BE RETAINED BY ME.**

AGREED:

_Jacqueline Lyles_
Contractor Name

_Jacqueline Lyles_
Signature

_1-18-19_
Date

# EXHIBIT 2

# INDEPENDENT PUBLISHER AGREEMENT

This agreement is entered into this 15th day of August, 20 15 (the "Effective Date"), by Lifestyle Publications, L.L.C., a Kansas Limited Liability Company ("Lifestyle Publications"), and Lifestyle Publications SE LLC ("Publisher").

## RECITALS:

Lifestyle Publications operates a business that publishes magazines for residential communities ("Lifestyle Publications Magazines") and that sells advertising for those publications (the "Lifestyle Publications Publishing Business").

Lifestyle Publications uses independent sales contractors who are compensated by commission to offer Lifestyle Publications' services to residential communities and to sell advertising for company publications.

Publisher wishes to become an independent sales contractor for the Lifestyle Publications Publishing Business in the geographic area described on Exhibit "A" of this Agreement (the "Territory").

NOW, THEREFORE, in consideration of the mutual undertakings and commitments set forth in this agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>APPOINTMENT OF PUBLISHER; EXCLUSIVITY</u>.

    (i)    <u>Appointment of Publisher</u>. Lifestyle Publications hereby appoints Publisher to serve as Lifestyle Publications' independent sales contractor to offer Lifestyle Publications' services and to solicit advertising for the Lifestyle Publications Magazines within the Territory, which may be expanded upon request, approval of which may be withheld at Lifestyle Publications' sole discretion. Publisher acknowledges and agrees that this Agreement only grants Publisher the right to operate as an independent sales contractor of Lifestyle Publications in the Territory. Publisher shall not actively solicit any residential community that is located outside of the Territory without Lifestyle Publications' prior written consent, which may be withheld at its sole discretion; provided, that no violation of this provision shall be deemed to have occurred where Publisher's <u>bona fide</u> advertising and promotional materials are found to be present outside the Territory, if the presence of such materials outside the Territory is an indirect consequence of Publisher's advertising and promotion within the Territory. Additionally, Publisher may not solicit any residential community or advertiser (regardless of whether it is located within or outside the Territory) that is already under a Publication Contract or Advertising Contract (each defined below) with Lifestyle Publications or its affiliates.

    (ii)    <u>Exclusivity</u>. As long as Publisher is not in default under this Agreement and is in Good Standing (defined below), during the term of this Agreement, Lifestyle Publications will not grant any other independent sales contractor the right to solicit any residential community located within the Territory for a Publication Contract under the Marks (defined below).

Initials – Lifestyle    Initials – Publisher

Notwithstanding anything in this Section 1(ii) to the contrary, Publisher acknowledges and agrees that Lifestyle Publications' permitting other independent sales contractors to solicit Advertising Contracts from advertisers located within the Territory will not constitute a breach of this Agreement by Lifestyle Publications. The rights granted to Publisher under this Agreement are nonexclusive, and Lifestyle Publications and its affiliates have and retain all rights within and outside the Territory except those expressly granted to Publisher in this Section 1(ii).

2.    <u>TERM AND RENEWAL</u>. The term of this Agreement will begin upon full execution of this Agreement by all parties. The term shall continue until five (5) years from the Effective Date, unless sooner terminated in accordance with this Agreement. The term of this Agreement will be renewed for additional consecutive five (5) year terms, provided that Publisher has not given written notice of nonrenewal at least ninety (90) days prior to the expiration of the initial term or the applicable renewal term, and further provided that Publisher satisfies the following conditions (or any additional conditions that Lifestyle Publications may require by giving written notice to Publisher) in connection with each renewal of this Agreement:

        (i)    Publisher must not be in default of this Agreement or any other agreement with Lifestyle Publications or any of its affiliates, and Publisher must have fully and timely complied with all such agreements during their respective terms;

        (ii)    Publisher must enter into Lifestyle Publications' then current form of independent Publisher agreement which will supersede this Agreement. The terms of that agreement may differ from the terms of this Agreement, except Lifestyle Publications Cost (defined below), which shall not be changed;

        (iii)    Publisher must execute a general release of any and all claims against Lifestyle Publications, its affiliates, and the officers, directors, shareholders, partners, agents, representatives, independent contractors, servants and employees of each of them, in their corporate and individual capacities, including claims arising under this Agreement or under federal, state or local laws, rules, regulations or orders for the prior term; and

        (iv)    Publisher must comply with Lifestyle Publications' then current Publisher qualification requirements.

3.    <u>GOOD STANDING</u>.  In addition to Publisher's other obligations under this Agreement, at all times during the term of the agreement, Publisher must be and remain in Good Standing. For the purposes of this Agreement, "Good Standing" means (i) the total Publication Expenses (defined below) and other expenses for all Lifestyle Publications Magazines for which Publisher is responsible do not exceed the total revenue actually received by Lifestyle Publications under the Advertising Contracts for all Lifestyle Publications Magazines for which Publisher is responsible in any two (2) calendar months in a year during the term hereof and (ii) Publisher is operating in accordance with all of Lifestyle Publications' standards and procedures, including those set forth in Lifestyle Publications Administration Manual current and as amended.

Case 7:19-cv-00089-BO   Document 51-12   Filed 06/25/20   Page 11 of 23

4.    COMPENSATION.



5.    PUBLISHER'S DUTIES. In fulfilling Publisher's duties, Publisher understands that Lifestyle Publications is a family-friendly publication, that it upholds strict graphic and editorial standards, and that it works diligently to maintain its public image. Publisher understands and agrees that Lifestyle Publications may, at its sole discretion, reject any Publication and

Case 7:19-cv-00089-BO   Document 51-12   Filed 06/25/20   Page 12 of 23

Advertising Contracts (defined below) for any reason whatsoever, and that Lifestyle Publications will specifically not accept Publication and Advertising Contracts from night clubs, casinos, or adult novelty stores. In addition to those obligations described elsewhere in this Agreement, during the term of this Agreement or any renewal thereof, Publisher shall:

        (i)     Solicit contracts for Lifestyle Publications Magazines from residential communities within the Territory ("Publication Contracts") and for advertising in such Lifestyle Publications Magazines from advertisers ("Advertising Contracts") (Publication Contracts and Advertising Contracts are referred to collectively as "Publication and Advertising Contracts"), quoting only such prices and terms as are set by Lifestyle Publications (or otherwise approved by Lifestyle Publications in writing) and using the form contracts required by Lifestyle Publications. All Publication and Advertising Contracts will be between Lifestyle Publications or its affiliates and the residential community or advertiser, as applicable, and Publisher will not be a party to, or a third-party beneficiary of, any such Publication or Advertising Contract. All Publication and Advertising Contracts shall be subject to approval or rejection by Lifestyle Publications. Additionally, all fees and amounts payable under the Publication and Advertising Contracts must be paid directly to Lifestyle Publications or its designee in accordance with the terms thereof, and Publisher shall not accept any payments from any advertiser or residential community;

        (ii)    Promptly forward to Lifestyle Publications all Publication and Advertising Contracts which have been executed by the residential community or advertiser, as applicable, for review, approval, and execution by Lifestyle Publications; and

        (iii)   Diligently promote the sale of, and stimulate interest in, the Lifestyle Publications Magazines and advertising therein within the Territory.

6.    <u>INDEPENDENT CONTRACTOR STATUS</u>.

        (i)     Except as specifically provided herein, Lifestyle Publications shall not control the details, manner or means by which Publisher performs Publisher's obligations hereunder in any material respect. Publisher agrees to perform such obligations hereunder solely as an independent contractor. The parties to this Agreement recognize that this Agreement does not create any actual or apparent agency, partnership, franchise, or relationship of employer and employee between the parties. Publisher is not authorized to enter into or commit Lifestyle Publications to any agreements, except when entering into Publication and Advertising Contracts for the benefit of Lifestyle Publications, and such agreements must be within the Lifestyle Publications' guidelines for Publication and Advertising Contracts. Otherwise, the Publisher shall not represent itself as the agent or legal representative of Lifestyle Publications.

        (ii)    Except as otherwise specifically provided herein, at all times during the term of this Agreement, or any renewal thereof, Publisher shall exercise Publisher's own independent professional judgment in connection with Publisher's performance of obligations and duties arising under this Agreement.

        (iii)   Nothing contained herein or in any document executed in connection herewith, shall be construed to create an employer-employee partnership or joint venture

Initials – Lifestyle    Initials – Publisher

relationship between Lifestyle Publications and Publisher. Publisher is an independent contractor and not an employee of Lifestyle Publications or any of its subsidiaries or affiliates. The consideration set forth in Section 4 shall be the sole consideration due Publisher for the services rendered hereunder. It is understood that Lifestyle Publications will not withhold any amounts for payment of taxes from the compensation of Publisher hereunder. Lifestyle Publications shall not be liable for taxes, Worker's Compensation, unemployment insurance, employers' liability, employer's FICA, social security, withholding tax, or other taxes or withholding for or on behalf of Publisher or any other person consulted or employed by the Publisher in performing services under this Agreement. All such costs shall be Publisher's responsibility. Publisher will not represent to be or hold itself out as an employee of Lifestyle Publications and Publisher acknowledges that Publisher shall not have the right or entitlement in or to any of the pension, retirement, medical, dental, life insurance, 401(k) program, stock option plan, stock purchase plan, vacation leave, sick leave and/or holidays leave or any other benefit programs now or hereafter available to Lifestyle Publications' regular employees. Publisher shall not be entitled to any remuneration, benefits, or expenses other than as specifically provided for in this Agreement.

     (iv)    Any and all sums subject to deductions, if any, required to be withheld and/or paid under any applicable state, federal or municipal laws or union or professional guild regulations shall be Publisher's sole responsibility, and Publisher shall indemnify and hold Lifestyle Publications harmless from any and all damages, claims and expenses arising out of or resulting from any claims asserted by any taxing authority as a result of or in connection with said payments.

     (v)    If, notwithstanding the parties' specific intention and agreement as set forth herein, Publisher is finally adjudged to be an employee of Lifestyle Publications by a court of competent jurisdiction, then to the maximum extent permitted by applicable law, such status shall not entitle Publisher to, and Publisher specifically waives entitlement to any and all Lifestyle Publications' employee benefits, including, but not limited to, medical, dental, life insurance, 401(k) program, stock-related plans, paid leave and holidays. In the event Publisher is finally adjudged to be entitled to any of such benefits by a court of competent jurisdiction, Lifestyle Publications shall be entitled to recover from Publisher the fair market value of any such benefits if, and to the extent that, the monetary compensation payable to Publisher under this Agreement exceeds the reasonable salary, prorated for the term of this Agreement, that Publisher would have received if Publisher had actually been hired, as of the Effective Date of this Agreement, as an employee of Lifestyle Publications to do equivalent work.

     (vi)    Publisher shall devote such time to the performance of Publisher's obligations and duties hereunder as is necessary for satisfactory performance; however, Publisher shall have no obligation to work any particular hours or days or any particular number of hours or days. Publisher shall determine where to conduct business and is not required to maintain a particular office or work space.

7.    <u>CONFIDENTIALITY AND NONCOMPETITION</u>.

     (i)    <u>Confidentiality</u>. Publisher agrees that the Confidential Information (defined

Case 7:19-cv-00089-BO   Document 51-12   Filed 06/25/20   Page 14 of 23

below) is solely owned by Lifestyle Publications and this Agreement will not grant to Publisher any rights in or to the Confidential Information. Publisher further agrees that the use or duplication of any of the Confidential Information in any other business would constitute an unfair method of competition. Publisher acknowledges that Lifestyle Publications desires to maintain the confidentiality of the Confidential Information and is making such information available to the Publisher for use only in connection with acting as an independent sales contractor of Lifestyle Publications under the terms and conditions of this Agreement. Publisher further acknowledges and agrees that the Confidential Information is proprietary to and a valuable trade secret of Lifestyle Publications and that any disclosure or unauthorized use thereof will cause irreparable loss and harm to Lifestyle Publications. In consideration of the opportunity to obtain access to the Confidential Information, Publisher hereby agrees as follows:

(a)     Not to use the Confidential Information for Publisher's own use or for any other purpose except to carry out Publisher's obligations as an independent sales contractor for Lifestyle Publications under this Agreement and not to disclose the Confidential Information, except (i) as may be required by law, or (ii) to outside counsel, accountants, and other representatives of Publisher. In the event Publisher or any persons to whom Publisher discloses the Confidential Information become legally compelled (by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) to disclose any of the Confidential Information, Publisher will provide Lifestyle Publications with prompt prior written notice of such requirement so that Lifestyle Publications may seek a protective order or other appropriate remedy and/or waive compliance with the terms hereof. In the event that such protective order or other remedy is not obtained, or that Lifestyle Publications waives compliance with the provisions hereof, Publisher agrees to furnish only that portion of the Confidential Information which Publisher is advised by written opinion of counsel is legally required and to exercise best efforts to obtain assurance that confidential treatment will be accorded such Confidential Information;

(b)     To ensure that all outside counsel, accountants and other representatives of Publisher who are given access to the Confidential Information on behalf of Publisher will abide by the confidentiality provisions of this Agreement. Publisher shall be fully responsible for any breach of this Agreement by any person to whom access to the Confidential Information is given by the Publisher or its representatives;

(c)     Not to make copies of the Confidential Information unless specifically authorized by a member of Lifestyle Publications executive staff; and

(d)     Upon termination or expiration of this Agreement, to promptly return to Lifestyle Publications any and all Confidential Information and all copies thereof.

As used in this Agreement, the "Confidential Information" means information, oral or written, know-how and documents relating to Lifestyle Publications or the Lifestyle Publications Publishing Business, furnished by Lifestyle Publications, or representatives of Lifestyle Publications, to Publisher. Lifestyle Publications' Confidential Information includes, without limitation, all trademarks, trade names, service marks, emblems and indicia of origin used by Lifestyle Publications in connection with the operation of the Lifestyle Publications Publishing Business,

and all trade secrets or know-how, including, but not limited to, research, plans, products, services, customer lists, business plans, marketing data, software, forms, processes, methods of operation, and other business information disclosed to Publisher by Lifestyle Publications or its representatives.

    (ii) <u>Noncompetition.</u>



    (iii) <u>Reasonableness of Covenants</u>. Publisher agrees that the preceding covenants contain reasonable limitations as to time, geographical area, and scope of activity to be restrained and such limitations do not impose a greater restraint than is necessary to protect the goodwill or other business interests of Lifestyle Publications. Each of the covenants herein shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 7 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Lifestyle Publications is a party, Publisher expressly agrees to be bound by any lesser covenant subsumed within the

Initials – Lifestyle  Initials – Publisher

terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section of the Agreement. Publisher further understands and agrees that Lifestyle Publications will have the right, in its sole discretion, to reduce the scope of any covenant set forth in this Section, or any portion thereof, without Publisher's consent, effective immediately upon notice to Publisher, and Publisher agrees that Publisher will promptly comply with any covenant as so modified.

8.    <u>USE OF MARKS AND COPYRIGHTED MATERIALS</u>. In furtherance of Publisher's appointment, Lifestyle Publications grants Publisher a limited non-exclusive license to use those Lifestyle Publications trademarks and service marks ("Marks") and copyrighted materials ("Copyrighted Material") designated by Lifestyle Publications, solely for the purpose of advertising and promoting the Lifestyle Publications Publishing Business in the Territory. Due to the nature of the relationship between the parties and for their mutual benefit, the license is granted royalty-free. Publisher further expressly agrees that:

(i)    Lifestyle Publications is the lawful owner of the Marks and the Copyrighted Materials. Publisher's interest in the Marks and the Copyrighted Materials is solely that of a licensee, and all goodwill attributable to the use of the Marks in the Territory will accrue to the benefit of Lifestyle Publications. Publisher disclaims any proprietary interest in any of the Marks and the Copyrighted Materials.

(ii)    Publisher shall not use the mark "Lifestyle Publications Publishing" or "Lifestyle Publications" or any abbreviation, acronym or variation of those words as part of Publisher's name or that of any business entity in which Publisher owns or holds an interest.

(iii)    Publisher shall use the Marks in the precise form that Lifestyle Publications prescribes and shall observe Lifestyle Publications' directions regarding the presentation, display and use of the Marks and the use, copying and distribution of the Copyrighted Materials.

(iv)    Publisher shall not establish an Internet website that uses the Marks or the Copyrighted Material. Publisher acknowledges that Lifestyle Publications has established and maintains an Internet website that provides information about the Lifestyle Publications Publishing Business. Lifestyle Publications will have sole discretion and control over the website's design and contents. Publisher acknowledges that Lifestyle Publications is the lawful, rightful and sole owner of all Internet Domain Names associated with the publication(s) and unconditionally disclaims any ownership interest in those or any colorably similar Internet domain name. Publisher agrees not to register any Internet domain name in any class or category that contains the words "Lifestyle Publications" or "publishing" or any abbreviation, acronym or variation of those words.

(v)    Publisher shall obtain Lifestyle Publications' prior approval for any and all advertising and promotional materials that Publisher desires to use and that have not been prepared or previously approved by Lifestyle Publications. Publisher shall submit such unapproved plans and materials to Lifestyle Publications (by personal delivery, by facsimile or through the mail). Publisher shall not use such plans or materials until approved by Lifestyle

Initials – Lifestyle      Initials – Publisher

Case 7:19-cv-00089-BO   Document 51-12   Filed 06/25/20   Page 17 of 23

Publications. Publisher shall immediately discontinue use of any promotional or advertising plans or materials upon notice from Lifestyle Publications to do so.

9.    DEDICATED TELEPHONE NUMBER.

(i)    At all times during the term of this Agreement, Publisher shall maintain, at Publisher's sole cost and expense, a dedicated telephone line/number ("Dedicated Telephone Number") with answering machine or answering service for Publisher's operations as a Lifestyle Publications Publisher. Publisher shall give only such Dedicated Telephone Number to advertisers, residential communities, and other organizations or individuals in connection with Publisher's operation as a Lifestyle Publications Publisher.

(ii)    Publisher hereby appoints Lifestyle Publications as Publisher's true and lawful attorney-in-fact, with full power and authority to assign to Lifestyle Publications upon the termination, expiration, or transfer of this Agreement all rights to the Dedicated Telephone Number(s) and any business listings related thereto. Such power of attorney shall survive the expiration or termination of this Agreement, and Publisher agrees to execute such forms and documents as Lifestyle Publications deems necessary to appoint Lifestyle Publications as Publisher's true and lawful attorney-in-fact with full power and authority for the foregoing purposes. Lifestyle Publications will not assume any obligations for costs or expenses related to such Dedicated Telephone Number(s) that accrued prior to the date on which Lifestyle Publications acquired the Dedicated Telephone Number(s).

10.    TRANSFER AND ASSIGNMENT.

(i)    By Lifestyle Publications. Lifestyle Publications shall have the right to transfer and/or assign this Agreement to any person or legal entity without prior notice to, or consent of, Publisher.

(ii)    By Publisher. Publisher shall not transfer or assign this Agreement without Lifestyle Publications' prior written consent, which may be withheld at Lifestyle Publication's sole discretion. Any such consent may be conditioned on the proposed transferee or assignee meeting Lifestyle Publications' then-current qualifications and standards for a Lifestyle Publications Publisher.  Any attempted transfer or assignment without Lifestyle Publications' prior written consent shall be invalid and unenforceable. The parties acknowledge and agree that if Lifestyle Publications consents to a transfer or assignment of this Agreement by Publisher to a third-party that meets Lifestyle Publications' qualifications and standards for Lifestyle Publications Publisher, then and in that event, all commission rights to which Publisher is entitled under this Agreement related to the Publication and Advertising Contracts for which Publisher is responsible shall also be transferred to such third-party.

11.    TERMINATION.

(i)    By Lifestyle Publications. Lifestyle Publications may terminate this

Agreement immediately upon written notice to Publisher, without an opportunity to cure if: (a) Publisher fails to produce sufficient Publication and Advertising Contract sales to publish the first issue of Lifestyle Publications' magazine in Publisher's Territory by the fourth (4th) month following the beginning of the Term of this Agreement, (b) Publisher transfers or assigns, or attempts to transfer or assign, this Agreement in violation of Section 10 of this Agreement, (c) Publisher falsifies or in any way submits to Lifestyle Publications any Publication and Advertising Contracts which have not been authorized by the residential community or advertiser, as applicable; (d) Publisher is convicted of a felony; (e) Publisher uses the Marks or Copyrighted Materials or uses or discloses the Confidential Information in violation of this Agreement; or (f) if Publisher moves more than thirty (30) miles away from the Territory, which is hereby agreed to make fulfillment of Section 5 of this Agreement impossible. In addition, upon Publisher's failure to comply with any other provision of this Agreement (including, without limitation, Publisher's failure to remain in Good Standing) and Publisher's failure to cure such breach within thirty (30) days following the date of written notice from Lifestyle Publications, Lifestyle Publications may terminate this Agreement upon written notice to Publisher effective immediately.

   (ii) <u>By Publisher</u>. Upon Lifestyle Publications' failure to comply with any material provision of this Agreement and its failure to cure such breach within thirty (30) days following written notice from Publisher, Publisher may terminate this Agreement upon written notice to Lifestyle Publications.

12. <u>OBLIGATIONS OF PUBLISHER UPON TERMINATION</u>. Upon the expiration or termination of this Agreement, all rights granted to Publisher hereunder shall immediately terminate, and Publisher shall:

   (i) Immediately cease to conduct operations as a Publisher or independent sales contractor of Lifestyle Publications in the Territory;

   (ii) Promptly discontinue all further uses of the Marks and Copyrighted Materials and take appropriate action at Publisher's cost to return all Copyrighted Materials and Confidential Information in Publisher's possession or within Publisher's control to Lifestyle Publications;

   (iii) Comply with the covenants set forth in Sections 7(i) and 7(ii) hereof;

   (iv) At Lifestyle Publications' option, assign to Lifestyle Publications all rights to the Dedicated Telephone Number(s) and any related business listings and execute all forms and documents required by Lifestyle Publications to transfer such service and numbers to Lifestyle Publications. Publisher agrees to use different telephone numbers at or in connection with any subsequent business conducted by Publisher; and

   (v) Pay to Lifestyle Publications all amounts due under Section 4 of this Agreement; and

Initials – Lifestyle Initials – Publisher

Case 7:19-cv-00089-BO Document 51-12 Filed 06/25/20 Page 19 of 23

(vi)    Pay to Lifestyle Publications all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Lifestyle Publications subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Agreement; if applicable.

13.    <u>STANDARD OF CARE</u>. Publisher will perform Publisher's duties hereunder using a fair and reasonable standard of care, skill and diligence as would normally be provided by an experienced publisher performing work similar to the services to be provided under this Agreement.

14.    <u>INDEMNIFICATION</u>. Publisher shall indemnify and hold Lifestyle Publications, its affiliates, and their respective officers, directors, employees, owners, agents, representatives, and independent contractors, past or present, harmless, to the fullest extent permitted by law, from any and all losses and expenses (defined below) incurred in connection with any action, suit, proceeding, claim, demand, investigation or inquiry (formal or informal), or any settlement thereof (whether or not a formal proceeding or action has been instituted) which arises out of or is based upon any act or omission, whether actual or alleged, negligent or otherwise, of Publisher, its employees or agents, in connection with the performance of Publisher, its employees or agents, under this Agreement or the breach by Publisher of any representation or warranty herein. "Losses and expenses" shall include, without limitation, all losses, compensatory, exemplary or punitive damages, fines, charges, costs, expenses, reasonable attorneys' fees, court costs, settlement amounts, judgments, compensation for damages to Lifestyle Publications' reputation and goodwill, and other such amounts incurred in connection with the matters described. This indemnity shall survive the expiration or termination of this Agreement.

15.    <u>NOTICES</u>. Each party shall give notice under this Agreement in writing personally delivered, or sent by expedited delivery service or certified or registered mail, return receipt requested, first class postage prepaid, or sent by facsimile (provided that the sender confirms the facsimile by sending an original copy by certified or registered mail or expedited delivery service within three (3) business days after transmission) to the parties at the following addresses, or emailed to the following email address or to Publisher's assigned "lifestylepubs.com" email address until a different address is designated by written notice to the other party:

Notices to Lifestyle Publications:    Lifestyle Publications, L.L.C.
Attn:  DeLand Shore, Resident Agent
7373 W 107th St, Suite 201
Overland Park, KS 66212
Facsimile: 888.599.0733
Email: deland@lifestylepubs.com

Case 7:19-cv-00089-BO    Document 51-12    Filed 06/25/20    Page 20 of 23

Notices to Publisher:    *James V Newman*
                         *2 Wieuca Trace NE*
                         *Atlanta GA 30342*
                         Attention: _____
                         Facsimile: (_____)_____
                         Email: _____

16.    ENTIRE AGREEMENT. This Agreement, the attachments hereto, and the documents referred to herein constitute the entire Agreement between Lifestyle Publications and Publisher concerning the subject matter hereof, and supersede any prior agreements. No representations, inducements, promises, or agreements, oral or otherwise, not embodied herein shall be of any force or effect. Other than authorized amendments by Lifestyle Publications set forth in this Agreement, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to in writing by Lifestyle Publications and Publisher.

17.    APPLICABLE LAW. This Agreement shall be interpreted and construed under the laws of the state of Kansas, which laws shall prevail if there is any conflict of law (without regard to, and without giving effect to, the application of Kansas conflict of law rules).

18.    JURISDICTION AND VENUE. Publisher irrevocably consents to the personal jurisdiction of the state and federal courts located in the state, county, or judicial district in which Lifestyle Publications' principal place of business is located and hereby waives all questions of personal jurisdiction for the purpose of carrying out this provision. Publisher hereby agrees that service of process may be made upon Publisher in any proceeding relating to or arising out of this Agreement or the relationship created by this Agreement by any means allowed by Kansas or federal law and further agree that venue for any proceeding relating to or arising out of this Agreement shall be the county or judicial district in which Lifestyle Publications' principal place of business is located; provided, however, that Lifestyle Publications may bring any action for injunctive or other extraordinary relief in any state or federal district court which has jurisdiction.

19.    REMEDIES CUMULATIVE. No right or remedy conferred upon or reserved to Lifestyle Publications or Publisher by this Agreement is intended to be, nor shall be deemed, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy.

[signature page follows]

Initials – Lifestyle    Initials – Publisher

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement in duplicate, on the date first written above, each intending to be legally bound by its terms.

**PUBLISHER:**

By: _JAMAS NEWMAN_

Name: _____

Title: _PUBLISHER_

**LIFESTYLE PUBLICATIONS, LLC, a Kansas Limited Liability Corporation:**

By: _____

Name: DeLand J. Shore

Title: CFO

Initials – Lifestyle    Initials – Publisher

**Exhibit A**

**TERRITORY**

The Territory is the existing areas for BuckHaven Lifestyle and Perimeter North Lifestyle.

Initials – Lifestyle    Initials – Publisher