IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CIVIL ACTION FILE NO.: 7:19-cv-89-BO

| | |
|---|---|
| NEIGHBORHOOD NETWORKS PUBLISHING, INC. and N2 FRANCHISING, LLC,, <br><br> Plaintiffs, <br><br> v. <br><br> JACQUELINE MARIE LYLES and LIFESTYLE PUBLICATIONS, LLC, <br><br> Defendants. | DEFENDANT LIFESTYLE PUBLICATIONS, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM |

**SUPPORTING MEMORANDUM**

**I.   THE COURT SHOULD NOT CONSIDER THE PRIVILEGED DOCUMENTS THAT N2 FILED IN SUPPORT OF ITS RESPONSE.**

Exhibit 6 to N2's responsive statement of facts contains inadvertently-produced privileged documents that Publications S.E. included in response to a subpoena from N2. N2 did not notify Lifestyle that it had received privileged communications and instead filed the documents. *E.g.,* (Doc. 51-7 at N2_000058, -62, -63, -154, -163, -165). N2 claims that there is no attorney-client privilege because Lifestyle's counsel is not counsel for Publications S.E., but N2's response asserts that Publications S.E. is N2's agent, and protected communications in the presence of a client's agent are still privileged. *See State v. Murvin*, 284 S.E.2d 289, 294 (N.C. 1981); *Berens v. Berens*, 785 S.E.2d 733, 740–41 (N.C. Ct. App. 2016). Lifestyle has made a clawback request under Rule 26(b)(5)(B) and FRE 502(b), which places the burden on N2 to "promptly return, sequester, or destroy the specified information and any copies it has; … not use or disclose the information until the claim is resolved; [and] take reasonable steps to retrieve the information if the party disclosed it before being notified." The Court should not consider any protected documents in Exhibit 6 to N2's responsive statement of facts. (Doc. 51-7).

**II.   N2 CANNOT USE TESTIMONY FROM UNDISCLOSED WITNESSES.**

N2 offers the testimony of undisclosed witnesses Nicole Geraghty and Kathryn Miyahira in Exhibits 3 and 5 to its responsive statement of facts. (Docs. 51-4, 51-6). Neither witness appears on any

N2 disclosure statement. Ms. Miyahira now claims that supposedly Lyles downloaded a copy of an American Leather / Verde digital ad from N2's systems and that N2 suspects Lyles viewed information relating to when N2 customers' contracts with N2 expired. (Doc. 51-6 at 3-4). Ms. Geraghty claims that the contract expiration dates are supposedly trade secrets. (Doc. 51-4 at 3-4). These are new assertions. Under Rule 37(c)(1), as a result of N2's failure to disclose these witnesses, N2 "is not allowed to use that … witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." N2 offered no explanation and the Court must exclude the testimony of Geraghty and Miyahira. *See United States v. Quality Built Constr., Inc.,* 309 F. Supp. 2d 767, 772 (E.D.N.C. 2003).

**III.    N2 HAS CONCEDED THAT LIFESTYLE IS ENTITLED TO SUMMARY JUDGMENT ON THE TORTIOUS INTERFERENCE CLAIM.**

    **A.    N2 cannot unilaterally withdraw its tortious interference claims to avoid an adverse judgment.**

Now N2 suddenly asserts that it "elects to abandon its tortious interference claim." (Doc. 50 at 19). But, N2 cannot unilaterally withdraw its claim at the eleventh hour just to avoid an adverse judgment. That violates Rule 41, although N2 has not actually filed a Rule 41 motion. Moreover, by failing to respond on the merits to Lifestyle's arguments, N2 has actually conceded that Lifestyle is entitled to summary judgment on this claim. N2 sued Lifestyle and sought injunctive relief, including a TRO, against Lyles and Lifestyle based upon supposed violations of the non-compete within the Franchise Agreement. (Compl. ¶¶ 125-131). N2 has used the non-compete as a sword to vigorously litigate, but now that N2 faces the prospect of losing, it wants to pretend it never brought the claim. Lifestyle has incurred substantial defense costs and faces a significant risk of future threats from N2. Without a ruling on the non-compete, N2 is free to not only sue Lifestyle again on this same claim based on Lyles' conduct, but also to repeatedly threaten Lifestyle with liability for any future contractors similarly situated to Lyles (N2 and Lifestyle are competitors). Yet Lifestyle would have no fair recourse because it will have to incur substantial defense costs only to have N2 drop the claims every time on the eve of their determination. This is exactly what Rule 41 seeks to protect against.

    **B.    Even if N2's response was somehow a Rule 41 motion, it should be denied because it is an attempt to evade an adverse summary judgment ruling.**

Without a Rule 41 motion, N2 actually has not even tried to abandon its claim. But even if N2's response is treated as a motion, Rule 41 allows the dismissal "only by court order, on terms that the court

Case 7:19-cv-00089-BO   Document 52   Filed 07/09/20   Page 2 of 13
CORE/3506595.0005/160295613.2
2

considers proper." Fed. R. Civ. P. 41(a)(2). N2's attempted withdrawal on the eve of summary judgment is improper. In *McBride v. JLG Indus., Inc.*, 189 Fed. App'x 876, 878 (11th Cir. 2006), the Eleventh Circuit affirmed the denial of a motion for voluntary dismissal filed while summary judgment motions were pending because it was "solely motivated to avoid an expected adverse ruling on Defendants' summary judgment motions." And the denial of a motion to dismiss is appropriate when the plaintiff is "attempting to deprive the defendant of a ruling on the summary judgment motion by its dismissal tactic." *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969). "[A] party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357-358 (10th Cir. 1996).

There is no doubt that N2 seeks to evade an adverse decision here. N2 does not offer even a ***remotely plausible*** explanation as to why it seeks to dismiss the claim against Lifestyle—it cites a "Consent Order" but that was between only N2 and Lyles, not Lifestyle, and has no relevance on the claim as against Lifestyle. (Doc. 41). Lifestyle and N2 have not consented to any terms regarding the tortious interference claim. "Outright dismissal should be refused … when a plaintiff seeks to circumvent an expected adverse result." *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203 (N.D. Tex. 1988) (noting that "outright denial of a motion to dismiss should be reserved only for those cases where the defendant demonstrates … that dismissal will preclude the court from deciding a pending case or claim-dispositive motion"). "In such an instance the defendant is legally prejudiced because it is unable to obtain a determination—or at least an earlier determination—of the merits of plaintiff's claims." *Id.* at 204. "If such a litigation strategy were permitted, the result would open the door to permitting plaintiffs to move from court to court, testing the waters of each court's opinion of their claims, then, when unfavorable results were imminent, voluntarily dismiss the case and avoid all ramifications of an unfavorable judgment, allowing the plaintiffs to try again until they received the result they desired." *Councell v. Homer Laughlin China Co.*, 5:11CV45, 2012 WL 896646, at *2 (N.D.W. Va. Mar. 15, 2012).

"Factors a district court should consider in ruling on such motions are: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." *Gross v. Spies*, 133 F.3d 914, at *5 (4th Cir. 1998) (table decision). "These factors are not exclusive, however …." *Id.* N2 has forced Lifestyle to incur

substantial defense costs and offers no real explanation for the dismissal. Lifestyle's motion for summary judgment is pending. These weigh against allowing dismissal. *See Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 784 (Fed. Cir. 2002) (when plaintiff "had not offered a sufficient justification for a dismissal without prejudice," there was no abuse of discretion in denying the motion" and a dismissal "might well have constituted an abuse of discretion since [the plaintiff] was plainly seeking to avoid an adverse judgment"); *accord Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).

### C. N2 misrepresents the case law purportedly allowing it to "elect to abandon" its claim.

N2 outright misrepresents the two cases that it cites as supposedly allowing it to "elect to abandon" its claim. N2 fails to mention that in *Jolly v. University of North Carolina at Wilmington*, when the plaintiff abandoned two of his four claims, **the defendant did not object and the court never addressed the issue of whether the plaintiff could abandon the claims**. 831 F. Supp. 2d 916, 918 (E.D.N.C. 2011). N2's quote from *Jolly* is an assemblage from the court's **recitation of procedural history**, not its holding. *See id. Leibelson v. Cook* is no better. Like *Jolly*, the plaintiff abandoned a claim (for an Eighth Amendment violation) **and the defendants did not object**. 761 F. App'x 196, 200 (4th Cir. 2019). N2's parenthetical is incorrect—The Fourth Circuit did not hold that the "district court erred considering the merits of an abandoned claim." (Doc. 50 at 16). Actually, it held that the district court erred in *sua sponte* reviving the dead Eighth Amendment Claim under the errant belief that it had an "independent duty to evaluate the legal viability of claims" and then denying summary judgment for the defendant based on a claim **that no one was raising**. 761 F. App'x at 202. The Fourth Circuit reversed because the court "should not act as a plaintiff's lawyer and construct the party's theory of liability," much less *sua sponte* deny summary judgment on a claim that **all** parties treated as dead. *Id.* at 202-03.

### D. N2 has conceded that that Lifestyle is entitled to summary judgment because it failed to respond to Lifestyle's argument on the tortious interference claim.

When the Court turns to the merits of the tortious interference claim, it has an easy task: N2 has failed to respond to the substantive arguments in Lifestyle's motion for summary judgment regarding the non-compete agreement. Thus, N2 concedes that summary judgment in favor of Lifestyle is appropriate. *See Feldman v. Law Enf't Associates Corp.*, 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013), *aff'd*, 752 F.3d 339 (4th Cir. 2014) ("The court finds that Perry has conceded that summary judgment is appropriate on

4

both the wage claim and the contract claim because he has failed to respond to the arguments raised with respect to these claims in defendants' memorandum in support of the motion for summary judgment.") (collecting cases); *Bronitsky v. Bladen Healthcare, LLC*, 7:12-CV-147-BO, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) (plaintiff's "failure to oppose defendants' arguments made in support of their motion for summary judgment is fatal to plaintiff's claim"). N2 could have responded to the substance of Lifestyle's argument and also filed a separate Rule 41 motion, but it did not.

## IV. ALL OF N2'S REMAINING CLAIMS AGAINST LIFESTYLE EXCEPT FOR MISAPPROPRIATION ARE BARRED AS A MATTER OF LAW.

N2 argues Lifestyle is vicariously liable for Lyles' actions either under respondeat superior or ratification. (Doc. 50 at 8-15). N2 is incorrect to suggest that Lifestyle argued in its motion that Lyles was never an agent of Lifestyle or Publication S.E. (*Id.*) Rather, Lifestyle argued it was not liable for the specific conduct alleged because Lifestyle had not *directed* Lyles to undertake those specific acts. (Doc. 42 at 18, 21). N2's Complaint did not clearly articulate that Lifestyle's alleged liability rested on a respondeat superior or ratification theory of liability. Now that N2 has raised the argument that Lyles' general status as an agent renders Lifestyle vicariously liable, the glaring error in N2's argument is apparent. Under North Carolina law, a dismissal with prejudice of claims against an agent (Lyles) precludes any vicarious liability against the principal (Lifestyle). N2's claims against Lifestyle for computer trespass, unfair/deceptive practices, constructive trust, fraudulent misrepresentation or concealment, and punitive damages fail because N2 dismissed those claims with prejudice against Lyles.

### A. The Court's dismissal with prejudice of Lyles precludes vicarious liability for those same claims on the part of N2.

The dismissal with prejudice of claims against an agent extinguishes any vicarious liability of the principal for those same claims. "A judgment on the merits in favor of the employee precludes any action against the employer where, as here, the employer's liability is purely derivative." *Barnes v. McGee*, 204 S.E.2d 203, 205 (N.C. Ct. App. 1974). In *Barnes*, the North Carolina Court of Appeals stated:

> Plaintiffs elected to sue both the employee McGee and the employer. After all the evidence was in, they elected voluntarily to dismiss the action against the employee and proceeded to do so with the knowledge that the dismissal could be with prejudice. It is clear that the dismissal of plaintiffs' claim against the employee 'with prejudice' bars further prosecution of that claim against the employee and, insofar as he is concerned, is equivalent to a judgment on the merits in his favor. We are of the opinion that the dismissal should have the same result for the

CORE/3506595.0005/160295613.2

employer whose liability, if any, is derived solely from that of the employee.

*Id.* at 205. Likewise, in *BDM Investments v. Lenhil, Inc.,* the plaintiff settled with the employee and dismissed its claims with prejudice. 826 S.E.2d 746, 766 (N.C. Ct. App. 2019). "Under North Carolina law, such dismissal is a judgment on the merits as to the alleged employee, which precludes further action against the employer as to derivative liability." *Id.* Thus, the plaintiff's derivative claims against the employer "on the basis of *respondeat superior* are barred." *Id.* In *Graham v. Hardee's Food Systems*, the employer was entitled to summary judgment on all claims based on vicarious liability because the plaintiff had entered a voluntary dismissal with prejudice against the employee. 465 S.E.2d 558, 559 (N.C. App. 1996). A dismissal with prejudice "operates as a disposition on the merits and precludes subsequent litigation in the same manner as if the action had been prosecuted to a full adjudication against the plaintiff." *Id.* at 559-60. Thus, the plaintiff was "precluded from retrying [the] issues or calling into question any alleged wrongdoing by [the agent] in her action against [the principal] based upon the conduct of [the agent]." *Id.* at 560. The Court of Appeals affirmed the grant of summary judgment for the employer on the claims "dependent upon the alleged tortious conduct" of the agent. *Id.*

"[T]he appellate courts of this State have repeatedly held that a final adjudication on the merits that an agent bears no liability acts as *res judicata* to prevent an attempt to pursue derivative claims against the principal." *Cameron Hosp., Inc. v. Cline Design Assocs.*, 735 S.E.2d 348, 351 (N.C. Ct. App. 2012). *See also Wrenn v. Maria Parham Hosp., Inc.*, 522 S.E.2d 789, 794 (N.C. Ct. App. 1999) (employee's dismissal with prejudice precluded claims against the employer "in the same manner as if the action had been prosecuted to a full adjudication against the [employer]"); *Draughon v. Harnett County Bd. of Educ.*, 602 S.E.2d 721, 726 (N.C. Ct. App. 2004) (affirming summary judgment for principal because "the claims against the individually named defendants in the action have been dismissed on the merits."); *Diggs v. Forsyth Mem'l Hosp., Inc.*, 698 S.E.2d 200 (N.C. Ct. App. 2010) (trial court "entered an Order of voluntary dismissal with prejudice of Plaintiff's claims against Defendant's agents," which "preclud[ed] Plaintiff's action against Defendant"); *Boling v. Greer*, 791 S.E.2d 461 (N.C. Ct. App. 2016).

> **B.     The claims against Lyle dismissed with prejudice in the Consent Order are also dismissed against Lifestyle.**

The Consent Order provides that "[i]t acts as a final judgment only as to Plaintiffs' first and second claims for relief [the breach of non-compete and misappropriation of trade secrets claims] against

Defendant Lyles. All remaining claims against Defendant Lyles—Plaintiffs' third, fifth, sixth, seventh, and eighth claims for relief—are dismissed with prejudice." (Doc. 41 at 5). The claims dismissed with prejudice have been adjudicated in Lyles' favor and N2 cannot maintain those claims against Lifestyle because they are predicated on Lyles' conduct, as N2 admits. (Doc. 50 at 8). *See Graham*, 465 S.E.2d at 559-60. It does not matter that the Consent Order also recited that the claims against Lifestyle remained pending, (Doc. 50 at 8), because that mere recitation of the scope of the Order (showing that it was a Rule 54(b) judgment not including Lifestyle) could not alter the legal effect of the dismissal with prejudice under well-settled North Carolina law. The Court should grant summary judgment on N2's claims for computer trespass, unfair and deceptive practices, constructive trust, fraudulent misrepresentation/concealment, and punitive damages. The only claim not barred under *res judicata* is the misappropriation of trade secrets claim.

V. **N2 HAS NOT SHOWN THAT LYLES MISAPPROPRIATED ANY TRADE SECRETS.**

N2 did not respond to Lifestyle's argument, (Doc. 42 at 14-15), that N2 failed to take reasonable efforts to protect its trade secrets by allowing Lyles to unfettered access N2's systems for **seven months** after she sold her N2 franchise. Instead, N2 discusses passwords and confidentiality agreements. N2 had no specific plan or rules for terminating Lyles' access. It simply realized in March 2019 that it had not done so. By failing to respond to Lifestyle on this point, N2 has conceded this argument and summary judgment for Lifestyle is proper. *See Feldman*, 955 F. Supp. 2d at 536. Moreover, N2's negligence precludes any argument that it undertook "reasonable efforts" to maintain access to its supposed trade secrets. N2 provided the Cunningham ad to Lyles and Cunningham without any inquiry whatsoever.

Moreover, copies of published ads and the advertisers' contact information are not trade secrets. N2 has not contradicted Lifestyle's evidence showing that Lyles had not used or disclosed any ***trade secrets*** of N2. N2 talks about ads and contact information, but the bottom line is that N2 has identified only *one* of its customers that subsequently became a customer of Lifestyle: Cunningham. (Doc. 50 at 20). N2's other claim that Lyles downloaded an image of an ad and accessed contract information is based on the testimony of Miyahira, which was untimely disclosed and should not be considered.

Nor is the contact information for N2's customers a trade secret. Every published ad included contact information for the customer. "Customer names and addresses may not be protected as a 'trade secret' inasmuch as they can be readily ascertained through independent development." *Asheboro Paper*

& *Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 676 (M.D.N.C. 2009). And the end dates for the N2 customers' advertising contracts are also publicly ascertainable, because anyone can pick up a copy of *Peachtree Battle Living* and note which ads are no longer running in the latest issue. None of these items of information are trade secrets or even confidential information.

## VI. LYLES DID NOT COMMIT COMPUTER TRESPASS

N2 misinterprets N.C. Gen. Stat. § 14-458 by construing "except" to mean "in addition to." "Except" means "to take or leave out from a number or a whole." https://www.merriam-webster.com/dictionary/except. The plain meaning of § 14-858(a) is that to the extent "any of the following" enumerated acts in § 14-458 are also "otherwise made unlawful" under the other sections of the law—in other words, are grounds for criminal liability—they are excluded from the scope of § 14-458. Thus, the criminal statute of § 14-454 is excluded, not included, from being a basis of civil liability. N2's sole cause of action is under the specific acts enumerated under § 14-458.

Nor did Lyles commit computer trespass under § 14-458, which requires the access to be "without authority." N2 controls its own computer systems and chose to continue granting Lyles access through March 27, 2019. Lyles could not have acted "without authority" in accessing N2's system using N2's own invited login credentials. N2 authorized Lyles to log into N2 Portal and PubManager and assigned her access rights that allowed her to view ads, customers, and so forth. Her access was not without authority, and N2 has not established a violation of the statute.

## VII. THERE IS NO FRAUD BECAUSE N2 DID NOT RELY UPON LYLES' STATEMENTS IN REQUESTING THE CUNNINGHAM AD.

The sole basis for N2's fraud claim is the email in which Lyles asked if N2 would send a copy of the ad to Cunningham. N2 fails to show that the alleged misrepresentation was material and that it reasonably relied upon the misrepresentation, essential elements of fraud that are lacking here.

### A. N2 was willing to freely provide a copy of the ad to its former customer, so Lyles' status was not material.

"A misrepresentation or omission is 'material' if, had it been known to the party, it would have influenced the party's judgment or decision to act." *Latta v. Rainey*, 689 S.E.2d 898, 909 (N.C. Ct. App. 2010). N2 freely provided a copy of Cunningham's ad to Lyles despite knowing that Cunningham's use of that ad was not for purposes of advertising with N2. If Cunningham had wanted to continue advertising

with N2, it would not have asked N2 for a copy of its ad. The only reason to request the ad was to use it elsewhere. Lyles' employment status was not material to N2's decision to provide a copy of the ad.

### B. N2 had an affirmative duty to exercise diligence and failed to do so.

N2 claims it did not doubt Lyles' supposed misrepresentation of her employment status. (Doc. 50 at 25). That is not the law. To establish reasonable reliance, N2 has to have offered some evidence that it either was "denied the opportunity to investigate the property or could not discover the truth … by exercise of reasonable diligence." *State Props., LLC v. Ray*, 574 S.E.2d 180, 186 (N.C. Ct. App. 2002). Reasonable reliance on a claim for fraudulent concealment requires that the "material fact [must] be a fact that is not "discoverable in the exercise of the [plaintiff's] diligent attention or observation." *Everts v. Parkinson*, 555 S.E.2d 667, 675 (N.C. Ct. App. 2001).

> The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest.

*Calloway v. Wyatt*, 97 S.E.2d 881, 886 (N.C. 1957).

In *Calloway*, the purchasers of land knew there was a water shortage in the area, so their claimed reliance on the seller's "repeated and vague statements … 'plenty of water, plenty of water'" was not reasonable—"the law imposed upon plaintiffs the duty of turning on the spigots, or making some investigation, to find out about the water supply, and failing to do so, they cannot avail themselves of the seller's misrepresentations." *Id.* In *Cobb v. Pennsylvania Life Ins. Co.*, 715 S.E.2d 541, 550 (N.C. Ct. App. 2011), the court affirmed summary judgment because the plaintiff could not have reasonably relied upon alleged oral statements regarding the terms of an insurance policy when he failed to read the policy.

N2 offers no excuse as to why it failed to ask the purpose for requesting the Cunningham ad. It gave out the ad copy without any inquiry whatsoever while knowing that Lyles was no longer an Area Director. N2 did not exercise reasonable diligence.

## VIII. THE DECEPTIVE TRADE PRACTICES CLAIM FAILS.

N2 concedes that it is not basing the UDTPA claim against Lifestyle on the breach of contract claim against Lyles. (Doc. 50 at 30). N2 argues that an additional basis for the UDTPA claim is its claim

for misappropriation of trade secrets. But for the reasons already discussed, the misappropriation claim fails. Without any underlying tort or deceptive practice, N2's UDTPA claim fails too.

### IX. A CONSTRUCTIVE TRUST IS INAPPROPRIATE.

N2 has failed to identify any trade secrets that were ever in Lifestyle's possession. N2's supposed trade secrets pertaining to customers and their contract expirations have not only all expired, but N2 filed them into the public record in this case. (Doc. 51 at 12). Moreover, N2 fails to identify what property would be placed into the trust.

### X. N2 HAS NOT SHOWN ENTITLEMENT TO PUNITIVE DAMAGES.

There is no vicarious liability for punitive damages. N.C. Gen. Ann. § 1D-15. Even if Lyles satisfied the criteria, N2 offers no evidence or argument that Lifestyle—as opposed to Lyles—independently acted with such willful or wanton conduct to justify an award of punitive damages. The Court should deny any claim for punitive damages.

### XI. N2'S INNUENDO ABOUT SPOLIATION IS UNFOUNDED.

Finally, N2 asks the Court to deny an otherwise-meritorious motion for summary judgment because of alleged spoliation. N2 speculates that Lyles' email account held proof of wrongdoing, but never explains even generally what that would be; and it never requested production of documents from Lifestyle in Lyles' email account. N2 already knows that Cunningham is the only N2 customer to subsequently become a customer of Publication S.E. (or Lifestyle). "[T]he destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence—or utterly inadequate evidence—in support of a given claim to survive summary judgment on that claim." *von Muhlenbrock v. Billington*, 579 F. Supp. 2d 39, 45 (D.D.C. 2008). N2 fails to develop its spoliation argument or to show any genuine issue of material fact precluding summary judgment.

### XII. CONCLUSION

Lifestyle requests the Court grant its motion for summary judgment on all claims.

This 9th day of July, 2020.

/s/ Carrie M. Francis
CARRIE M. FRANCIS, #020453
carrie.francis@stinson.com
STINSON LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004

Telephone: 602.279.1600
Facsimile: 602.240.6925

/s/ Amy P. Hunt
Amy P. Hunt
Offit Kurman
301 South College Street, Suite 2600
Charlotte, NC 28202-6006
Telephone: (704)-377-2500
Facsimile: (704) 372-2619
Email: Amy.Hunt@offitkurman.com
NC State Bar No. 34166
Local Civil Rule 83.1(d) Counsel for Lifestyles Publications, LLC

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 7.2(f)(2) and 10.1, I certify that the foregoing memorandum uses proportionally spaced type of 11 points, is double spaced at 22 points per line, contains 1 inch margins, and does not exceed 10 pages in length.

This 9th day of July, 2020.

/s/ Carrie M. Francis
CARRIE M. FRANCIS, #020453
carrie.francis@stinson.com
STINSON LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone:    602.279.1600
Facsimile:    602.240.6925

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2020, I electronically filed the foregoing DEFENDANT LIFESTYLE PUBLICATIONS, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alexander C. Dale
email: acd@wardandsmith.com
Christopher S. Edwards
email: csedwards@wardandsmith.com
Ward and Smith, P.A.
Post Office Box 7068
Wilmington, NC 28406-7068
*Attorneys for Plaintiffs*

Matthew Nis Leerberg
email: mleerberg@foxrothschild.com
Jeffrey R. Whitley
email: jwhitley@foxrothschild.com
FOX ROTHSDCHILD, LLP
P.O. Box 27525
Raleigh, NC 27611
*Attorneys for Defendant Jacqueline M. Lyles*

This 9th day of July, 2020.

/s/ Carrie M. Francis
CARRIE M. FRANCIS, #020453
carrie.francis@stinson.com
STINSON LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone: 602.279.1600
Facsimile: 602.240.6925

/s/ Amy P. Hunt
Amy P. Hunt
Offit Kurman
301 South College Street, Suite 2600
Charlotte, NC 28202-6006
Telephone: 704.377.2500
Facsimile: 704.372.2619
Amy.Hunt@offitkurman.com
NC State Bar No. 34166
Local Civil Rule 83.1(d) Counsel for
Lifestyle Publications, LLC