IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-89-BO

NEIGHBORHOOD NETWORKS )
PUBLISHING, INC. and N2 )
FRANCHISING, LLC, )
 )
         Plaintiffs, )
 )
v. )    O R D E R
 )
JACQUELINE MARIE LYLES and )
LIFESTYLE PUBLICATIONS, LLC, )
 )
         Defendants. )

This cause comes before the Court on defendant Lifestyle Publication's motion for summary judgment and plaintiffs' motion to modify scheduling order, motion for extension of time, motion for sanctions, motion for leave to file sur-reply, and motion for privilege determination. The appropriate responses or replies have been filed and the matters are all ripe for ruling.

BACKGROUND

Plaintiffs Neighborhood Networks Publishing, Inc. and N2 Franchising, LLC own and publish magazines focused on specific communities and neighborhoods. N2 franchises the opportunity to publish these magazines. Defendant Jacqueline Lyles was a franchisee who operated in the Atlanta, Georgia area from February 1, 2016 to August 31, 2018. Lyles signed an agreement with plaintiffs in which she agreed not to compete with plaintiffs and not to solicit plaintiffs' customers for two years after the expiration, termination, or transfer of her franchise agreement. On August 31, 2018, Lyles sold her franchise, with N2's consent, to Craig O'Neal.

Through March 2019, she still had access to N2's cloud-based software systems that franchisees used to manage and process advertising contracts and orders and upload and manage files for publications in N2's magazines, and she used her N2-supplied credentials to access these systems and help O'Neal. In February 2019, Lyles began working as an independent contractor for Lifestyle Publications S.E., LLC (Publications S.E.), a publisher of four magazines and an independent contractor of defendant Lifestyle Publications.

Plaintiffs filed suit against Lyles and defendant Lifestyle in New Hanover County, North Carolina, alleging that after Lyles had transferred her franchise agreement she breached her contract with plaintiffs, misappropriated plaintiffs' trade secrets, committed computer trespass, engaged in unfair and deceptive trade practices, sought a constructive trust, and engaged in fraudulent misrepresentation/fraudulent concealment. Plaintiffs alleged claims for misappropriation of trade secrets, computer trespass, unfair and deceptive trade practices, constructive trust, and fraudulent misrepresentation or concealment against defendant Lifestyle, as well as a claim for tortious interference with contract. Plaintiffs sought punitive damages and further filed a request for temporary restraining order. [DE 1-4]. A temporary restraining order was entered by the Superior Court judge presiding. [DE 1-6].

In May 2019, Lifestyle removed the case from Superior Court based upon this Court's diversity jurisdiction.[1] Lifestyle answered the complaint [DE 5] and defendant Lyles filed a motion to dismiss or stay and compel arbitration. [DE 10]. A scheduling order was entered, setting a discovery deadline of June 4, 2020 and a motions-filing deadline of July 7, 2020. [DE 29]. Lyles's motion to dismiss was later withdrawn with the consent of plaintiffs, to be replaced by an amended motion to dismiss. [DE 30]. Lyles filed a motion to dismiss pursuant to Rule 12(b)(6), and on

---

[1] Following the removal of the case, plaintiffs did not seek any extension of the temporary restraining order or file a motion for preliminary injunction.

February 10, 2020, Lyles filed a joint motion for entry of judgment pursuant to Rule 54(b). [DE 40]. That motion was granted, and a consent judgment and permanent injunction was entered against Lyles on February 14, 2020. [DE 41]. The judgment "acts[ed] as a final judgment only as to Plaintiffs' first and second claims for relief against Defendant Lyles. All remaining claims against Defendant Lyles—Plaintiffs' third, fifth, sixth, seventh, and eighth claims—[were] dismissed with prejudice." *Id.* Plaintiffs' second, fourth, fifth, sixth, and seventh claims for relief against Lifestyle remain pending. *Id.*

Sometime between July 29 and December 5, 2019, an assistant for defendant Lifestyle deleted Lyles's email account. It is alleged that Jim Newman, the owner of Publications S.E., asked the assistant to delete Lyles's email account to save the cost of maintaining the account, but that DeLand Shore, defendant Lifestyle's chief financial officer, never received notification of the proposed deletion and therefore never approved it, as required by defendant Lifestyle's established procedures. On December 12, 2019, plaintiffs sent Publications S.E. a subpoena duces tecum. On March 24, 2020, plaintiff N2 filed a motion to compel in the United States District court for the Northern District of Georgia requesting that court to enter an order compelling Publications S.E.'s compliance with the subpoena. The court granted that motion on May 11, 2020 and directed Publications S.E. to fully respond within seven days of the date of the order. After receiving some documents, plaintiff N2 filed a motion to show cause in the Northern District of Georgia. Subsequently, in June 2020, Publications S.E. provided over 150 pages of documents responsive to the subpoena. On July 10, 2020, plaintiffs filed a motion for sanctions based on the deletion of Lyles's email account and the extended efforts required for compliance with the subpoena. [DE 53].

On June 4, 2020, defendant Lifestyle filed a motion for summary judgment. [DE 42]. On June 5, 2020, plaintiffs filed a motion to modify the scheduling order, which was corrected on June 8, 2020. [DE 45]. On June 8, 2020, plaintiffs filed a motion for extension of time to respond to defendant Lifestyle's motion for summary judgment. [DE 46]. On July 17, 2020, plaintiffs filed a motion for leave to file a sur-reply in opposition to defendant's motion for summary judgment. [DE 55]. As part of its June 2020 document production, Publications S.E. produced emails between Publications S.E., defendant Lifestyle, and defendant Lifestyle's counsel of record. Plaintiff N2 filed six emails in its response to defendant Lifestyle's motion to dismiss that defendant Lifestyle argues are privileged attorney-client communications because they are between defendant Lifestyle and its counsel and contain legal advice for defendant Lifestyle's benefit. Plaintiffs have filed a motion for privilege determination under Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. [DE 58].

## DISCUSSION

*Motion for Leave to File Sur-Reply*

Plaintiffs have filed a motion for leave to file a sur-reply to defendant Lifestyle's reply in support of its motion for summary judgment. Plaintiffs argue that a sur-reply is warranted because defendant Lifestyle's counsel admitted in recent correspondence that Publications S.E., and consequently Lyles, are agents of defendant Lifestyle. Plaintiffs further argue that a sur-reply is warranted to correct alleged misrepresentations and accusations made by defendant that some of plaintiff N2's responsive documents contained privileged communications and that plaintiff N2 cannot use testimony from Nicole Geraghty and Kathryn Miyahira because they are undisclosed witnesses.

"Neither the Federal Rules of Civil Procedure nor this court's local rules of procedure provides for the filing of surreply briefs." *Spivey v. Research Triangle Reg'l Pub. Transp. Auth.*, 2015 U.S. Dist. LEXIS 124775, at *26 (E.D.N.C. Aug. 10, 2015) (citation omitted). In fact, this Court's local rules "discourage[s]" sur-reply briefs. Local Civil Rule 7.1(g)(1). "[C]ourts generally allow a party to file a surreply 'only when fairness dictates based on new arguments raised in the previous rely.'" *Id.* at *27 (citations omitted).

Here, a sur-reply brief is not appropriate because defendant Lifestyle did not raise new arguments in its reply. Defendant Lifestyle did not make a blanket statement that everything Publications S.E. does is an agent for Lifestyle, but was rather only attempting to show that Publications S.E. was acting as an agent to publish magazines. That Publications S.E. is an agent of Lifestyle for publishing magazines does not automatically impose liability on defendant Lifestyle's for Lyles's alleged torts, as a principal can authorize its agent to complete one task without authorizing it to complete another. *See Miller ex rel. Bailey v. Piedmont Stream Co., Inc.*, 137 N.C. App. 520, 526 (2000) (finding a franchisor was not vicariously liable for its franchisee's torts when the franchisor did not exercise daily control over the franchisee's employees); *Foster v. Nat'l Christian Counselors Ass'n, Inc.*, No. 1:03CV00286, 2004 U.S. Dist. LEXIS 12365, at *13 (M.D.N.C. June 1, 2004) (finding that a vicarious liability claim failed because, although the tortfeasor was an authorized agent of defendant for the purposes of selling its curriculum, it did not give rise to liability for harms allegedly inflicted in the course of the tortfeasor's counseling and pastoring). Therefore, the claim that Publications S.E. acted as an agent for Lifestyle is not inconsistent with the prior statement that Publications S.E. is an independent contractor, *id.* at *12 (stating that, although the tortfeasor was an authorized agent of defendant, he was not considered an employee), and it was not newly-discovered evidence warranting a sur-reply.

5

Nor are plaintiffs entitled to a sur-reply based upon defendant Lifestyle's argument that plaintiffs cannot use the testimony of undisclosed witnesses or use privileged documents as evidence. "Where the arguments made by [d]efendants in their reply brief are merely responses to new arguments made by [p]laintiffs in their response, a sur-reply is not appropriate." *Equal Emp't Opportunity Comm'n v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom. Equal Emp't Opportunity Comm'n v. Freeman*, 778 F.3d 463 (4th Cir. 2015). Here, defendant Lifestyle's arguments that certain evidence or testimony could not be used should not have come as a surprise to plaintiffs, and the arguments should thus be considered as responsive arguments to the claims raised in the opposition brief. *See id.*; *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (denying motion for leave to file sur-reply because "[t]hough the City makes new subject matter jurisdiction arguments in its reply, the arguments respond directly to those Clear Channel makes in its response"). Challenges to admissibility of the opponent's evidence are routinely and properly raised in reply briefs, and those challenges should have been anticipated by plaintiffs. Therefore, the motion for leave to file a sur-reply is denied.

*Motion for Sanctions*

Plaintiffs have filed a motion for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for sanctions against defendant Lifestyle. Plaintiffs allege that sanctions are appropriate because defendant Lifestyle engaged in intentional spoliation of evidence, intentionally interfered with plaintiffs' discovery from Publications S.E, and mischaracterized facts to hide its actions. A court may impose sanctions pursuant to Rule 37. Fed. R. Civ. P. 37(e).

Plaintiffs first seek sanctions for spoliation, which is "the destruction of material alteration of evidence or [] the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). A party seeking sanctions based on spoliation must establish four threshold requirements: (1) the information should have been preserved, (2) the information was lost, (3) the information was lost because a party failed to take reasonable steps to preserve it, and (4) the information cannot be restored or recovered through additional discovery. *Eshelman v. Puma Biotechnology, Inc.*, 2017 U.S. Dist. LEXIS 87282, at *13 (E.D.N.C. June 7, 2017) (citation omitted); *Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 844–45 (S.D.W. Va. 2018) (citation omitted). If those elements are met, the district court has broad discretion in choosing an appropriate sanction "both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Silvestri*, 271 F.3d at 590 (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). However, dismissal should be avoided if a lesser sanction meets these goals. *Id.* (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

Rule 37(e) requires that the relevant information must, in fact, be lost and unable to be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e) ("If electronically stored information that should have been preserved . . . is *lost* . . . and it *cannot be restored or replaced* through additional discovery, the court . . . may order measures no greater than necessary to cure the prejudice.") (emphasis added). Here, plaintiffs have failed to show that any information was actually lost. Defendant states that all of the information exists in other forms, and Publications S.E. produced almost one hundred pages of emails that had been sent to or from Lyles' Lifestyle email address, showing that some, if not all, of the information plaintiffs claim was lost was still available.

7

Even if plaintiffs were able to show that any information was lost, plaintiffs are unable to show that the information could not be replaced through additional discovery. Plaintiffs never sent any discovery requests to defendant Lifestyle or Lyles herself regarding emails that plaintiffs allege were lost. Plaintiffs did ask Publications S.E. to produce emails that were sent or received from Lyles' deleted email address, and all of these emails were provided. Plaintiffs could have sought this information prior to filing a motion for sanctions, for example, by using a subpoena or deposition to ask Lyles about any allegedly missing emails. By failing to use other methods of discovery to restore or replace the information plaintiffs claim was lost, plaintiffs are unable to meet the requirements of Rule 37(e), *Eshelman*, 2017 U.S. Dist. LEXIS 87282, at *15 (holding that plaintiff had not established that the lost information could not "be restored or replaced through additional discovery" when plaintiff could have, but failed to, seek information through deposition), and the motion for sanctions must be denied.

Plaintiffs also claim that defendant Lifestyle intentionally interfered with plaintiffs' discovery from Publications S.E., claiming that defendant Lifestyle took affirmative steps to keep plaintiffs from accessing evidence that was not destroyed. For failure to comply with a court order, the district court where the action is pending may impose sanctions, including an order that that the disobedient party "pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). A valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court. *Id.* at 45(f). However, "[a] subpoena, obtainable as of course from the Clerk of the Court, is not the same order as one issued by a judicial officer in the resolution of a specific dispute." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) (citing *Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ), Inc.*, 893 F.2d 605, 608 (3d Cir. 1990) (en banc)).

8

Based on the overall scheme of Rule 37, a subpoena is not "an order to provide or permit discovery within the meaning of Rule 37(b)(2)." *Id.* at 1365. Therefore, this Court cannot use Rule 37(b) to impose sanctions for defendant Lifestyle's alleged interference with subpoena because the sanction provisions of that rule "are not applicable until there has been an order by the court compelling production." *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975). On May 11, 2020, five months after plaintiffs gave Publications S.E. the subpoena, the District Court for the Northern District of Georgia did issue a discovery order. Deficiencies in production were further resolved in that district. However, plaintiffs cannot seek sanctions for alleged interference with the subpoena in this Court under Rule 37. Furthermore, this Court declines to impose sanctions pursuant to any inherent authority plaintiffs allege it has. While plaintiffs show that the Court, in some situations, has the authority to impose sanctions and order an opposing party to pay attorney's fees, plaintiffs have failed to cite a single case from any court in which the court imposed sanctions for interference with a subpoena.

*Motion for Summary Judgment*

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in

9

support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Plaintiffs argue that Lifestyle is liable for Lyles's conduct under a theory of *respondeat superior*. Under this theory, a principal is liable for the acts of its agent committed "within the scope of the agent's authority." *Blanton v. Moses H. Cone Mem'l Hosp., Inc.*, 319 N.C. 372, 375 (1987). Plaintiffs assert that Lyles was responsible for soliciting advertising for Lifestyle's publications and that Lyles's wrongful conduct took place in the course of accomplishing this task. They also argue that Lyles was an agent of Lifestyle because Lyles had the authority to act on behalf of Lifestyle and because Lifestyle controlled Lyles's actions. *See Phelps-Dickinson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 435 (2005).

Because plaintiffs attempt to hold Lifestyle liable under a theory of *respondeat superior* and because the claims against Lyles have been dismissed with prejudice, plaintiffs' remaining claims of computer trespass, unfair/deceptive practices, constructive trust, fraudulent misrepresentation or concealment, and punitive damages are barred. Dismissal of a plaintiffs' claims against an employee with prejudice bars further prosecution and is therefore functionally equivalent to a judgment on the merits in her favor. *Barnes v. McGee*, 204 S.E.2d 203, 205 (N.C. Ct. App. 1974). *See Graham v. Hardee's Food Systems*, 465 S.E.2d 558, 559–60 (N.C. App. 1996) (stating that a dismissal with prejudice "operates as a disposition on the merits and

precludes subsequent litigation in the same manner as if the action had been prosecuted to full adjudication against the plaintiff"). Therefore, the dismissal of the claims against Lyles with prejudice enter on February 14, 2020 constitutes a judgment on the merits. A judgment on the merits in the employee's favor precludes any action against the employer where employer's liability is purely derivative. *Id. See also Cameron Hosp., Inc. v. Cline Design Assocs.*, 735 S.E.2d 348, 351 (N.C. Ct. App. 2012) (stating that "a final adjudication on the merits that an agent bears no liability acts as *res judicata* to prevent an attempt to pursue derivative claims against the principal"); *Wrenn v. Maria Parham Hosp., Inc.*, 522 S.E.2d 789, 794 (N.C. Ct. App. 1999) (stating that the dismissal of the claims against an employee with prejudice precluded claims against the employ "in the same manner as if the action has been prosecuted to a full adjudication"). Therefore, the claims against Lifestyle that are based on a theory of *respondeat superior* are barred as a matter of law and must be dismissed.

The only remaining claim not barred by the dismissal of the claims against Lyles is the misappropriation of trade secrets claim. Lifestyle argues that this claim must fail because N2 authorized Lyles to access its computer system; N2 failed to take reasonable steps to protect its trade secrets; and, if Lyles had misappropriated trade secrets, she did so without the knowledge or direction of Lifestyle. Plaintiffs base their misappropriation claim in on Lyles's conduct in accessing N2 Portal, but N2 continuously authorized Lyles to access N2 Portal from the beginning of her tenure as an area director in February 2016 until N2 terminated her access on March 27, 2019, seven months after she sold her franchise. The Court finds that plaintiffs conceded that summary judgment is appropriate on this claim because they failed to respond to Lifestyle's argument in its memorandum in support of its motion for summary judgment that plaintiffs failed to take reasonable efforts to protect its trade secrets. *See Feldman v. Law*

*Enforcement Assocs. Corp.*, 955 F. Supp. 528, 536 (E.D.N.C. 2013) (finding that plaintiff had conceded that summary judgment was appropriate on multiple claims when he "failed to respond to the arguments raised with respect to [those] claims in defendants' memorandum in support of the motion for summary judgment") (citations omitted).

Even if plaintiffs had not made such a concession, however, the misappropriation of trade secrets claim would still fail. Misappropriation of a trade secret requires that defendant have acquired, disclosed, or used another's trade secret "without express or implied authority or consent." N.C. Gen. Stat. § 66-152 (2012). Trade secret protection is limited to "business or technical information" that "[d]erives independent or actual or potential commercial value from not being generally known or readily ascertainable" and that "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* Accordingly, information that is not subject to reasonable efforts to maintain its secrecy is not entitled to trade secret protection. *Capitol Comm'n, Inc. v. Capitol Ministries*, No. 5:11-CV-214-BO, 2013 U.S. Dist. LEXIS 142542 (E.D.N.C. Oct. 1, 2013). N2 controlled Lyles's access to N2 Portal and could have terminated her access at any time, but it instead allowed her to access the computer systems even after she no longer had an ongoing relationship with N2. Plaintiffs cannot now claim that Lyles accessed N2 Portal without "express or implied authority or consent," and it does not have evidence that Lyles acquired any trade secrets following her removal from the N2 Portal. Furthermore, plaintiff cannot claim that it used reasonable efforts to protect its trade secrets after it provided Lyles access to N2 Portal and then continued to provide Lyles that free access for seven months after she had sold her franchise. Therefore, plaintiffs' misappropriation of trade secrets claim must be dismissed.
12

*Motion for Privilege Determination*

In June 2020, defendant Lifestyle produced documents, including dozens of emails between Publications S.E., defendant Lifestyle, and defendant Lifestyle's outside counsel, in response to a subpoena issued by plaintiff N2. Plaintiff N2 filed those emails on the public docket in opposition to Lifestyle's motion for summary judgment. Defendant Lifestyle claims that these documents are covered by attorney-client privilege and the work-product doctrine. Plaintiffs have filed a motion for privilege determination under Rule 26(b)(5)(B).

> Under North Carolina Law, attorney client-privilege exists if its proponent shows:
>
> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose and (5) the client has not waived the privilege.

*In re Miller*, 357 N.C. 316, 335 (2003). Each of these five elements must be present throughout the attorney-client communication for the entire communication to be privileged. *Id.* ("If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged.").

Even if the Court determined that these documents were not privileged and considered them in its ruling on the summary judgment, it would not affect the outcome of the Court's summary judgment determination. Therefore, the motion for privilege determination is denied as moot.

*Motion to Modify Scheduling Order*

Plaintiffs have filed a motion to modify the scheduling order to allow discovery to close on October 5, 2020 and dispositive motions to be filed by November 9, 2020. Plaintiffs allege that defendant Lifestyle interfered with Publication S.E.'s compliance with the subpoena and that

13

many of the documents eventually produced were incomprehensible and disorganized. Plaintiffs also argue that the COVID-19 pandemic has also impeded the completion of discovery, specifically with depositions. Defendants oppose this motion.

In order to modify a court's scheduling order or extend discovery, there must be "good cause." Fed. R. Civ. P. 6(b)(1)(A), 16(b)(4). "A Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Velasquez v Salsas & Beer Rest., Inc.*, 2016 U.S. Dist. LEXIS 76526, at *5 (E.D.N.C. June 13, 2016). The good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension. *Cook v. Howard*, 484 Fed. App'x 805, 815 (4th Cir. 2012).

Here, plaintiff cannot show good cause. From October 9, 2019, when the scheduling order was entered, to June 8, 2020, a period of almost ten months, plaintiffs issued no written discovery, made no expert disclosures or any other disclosures, or requested or noticed any deposition. COVID-19 was not a concern until March 2020, but plaintiffs did not seek discovery from plaintiff either before or after the pandemic. Plaintiff was not diligent and cannot now attempt to modify the scheduling order. Furthermore, even if the Court did modify the scheduling order to allow for additional discovery, this would not change the Court's decision on summary judgment.

*Motion for Extension of Time to Respond to Motion for Summary Judgment*

On June 8, 2020, plaintiffs filed a motion for extension of time to respond to defendant Lifestyle's motion for summary judgment. Plaintiffs sought an extension of time up to and including December 4, 2020. Defendants opposed this motion. However, plaintiffs filed their

response to the motion for summary judgment on June 25, 2020. Therefore, this motion must be denied as moot.

## CONCLUSION

Defendant Lifestyle's motion for summary judgment [DE 42] is GRANTED. Plaintiffs' motion to modify scheduling order, motion for sanctions, and motion for leave to file sur-reply are DENIED. [DE 45, 53, 55]. Plaintiffs' motions for privilege determination and for extension of time to file response/reply are DENIED as MOOT. [DE 46, 58]. All claims against defendant Lifestyle are dismissed, and the Clerk is DIRECTED to close the case.

SO ORDERED, this 31 day of January, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE